IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THOMAS ROSSBACH #760166<br>P.O. Box 788<br>Mansfield, Ohio 44901<br><br>   Plaintiff,<br><br> vs.<br><br>NICOLINA HETER<br>C/O Mansfield Correctional Institution<br>150 N. Main Street<br>Mansfield, OH 44903<br><br>   and<br><br>KENDRA NEWLAND, CNP<br>C/O Mansfield Correctional Institution<br>150 N. Main Street<br>Mansfield, OH 44903<br><br>   and<br><br>JESSEE GLASS<br>C/O Mansfield Correctional Institution<br>150 N. Main Street<br>Mansfield, OH 44903<br><br>   and<br><br>TIMOTHY McCONAHAY<br>C/O Mansfield Correctional Institution<br>150 N. Main Street<br>Mansfield, OH 44903<br><br>   and<br><br>KASEY PLANK<br>C/O Mansfield Correctional Institution<br>150 N. Main Street<br>Mansfield, OH 44903<br><br>   and | CASE NO.<br><br>JUDGE<br><br>**COMPLAINT**<br><br>42 U.S.C. 1983<br>Violation of the Eighth Amendment<br><br>**Jury Demand Endorsed Hereon** |

1

JANE DOE NURSE 1 :
:
        Defendants. :
:

:

## JURISDICTION & VENUE

1. This is a civil action authorized by 42 U.S.C. §1983 to redress the deprivation of certain constitutional rights, under the color of law, by the named Defendants in their individual capacity with jurisdiction established under 28 U.S.C. §1331 and §1343(a).

2. The Northern District of Ohio is an appropriate venue under 28 U.S.C. §1391(b)(2) because it is the location where the events giving rise to the claims occurred.

3. Plaintiff has exhausted all administrative remedies available under 42 U.S.C. § 1997(e), the Prison Litigation Reform Act.

## PARTIES

4. Plaintiff, Thomas Rossbach, is an individual and at all times relevant herein, was incarcerated at the Mansfield Correctional Institution, a corrections facility operated by the Ohio Department of Rehabilitation and Corrections.

5. Defendant, Nicolina Heter, is and was at all times relevant herein, employed by the State of Ohio, Ohio Department of Rehabilitation and Corrections as the Health Care Administrator at Mansfield Correctional Institution.

6. Defendant, Kendra Newland, is a Certified Nurse Practitioner (CNP), who operates a private-practice and was at all times relevant herein, employed either part-time or by contract by the State of Ohio, Ohio Department of Rehabilitation and Corrections at the Mansfield Correctional Institution.

7. Defendant, Jessee Glass, is a Certified Nurse Practitioner (CNP), who was and is at all times relevant herein, either employed directly or by contract by the State of Ohio, Ohio Department of Rehabilitation and Corrections at the Mansfield Correctional Institution.

8. Defendant, Timothy McConahay, was at all times relevant herein, employed by the State of Ohio, Ohio Department of Rehabilitation and Corrections as Warden at Mansfield Correctional Institution (M.A.N.C.I).

9. Defendant, Kasey Plank, was at all times relevant herein, employed by the State of Ohio, Ohio Department of Rehabilitation and Corrections as Administrative Assistant to the Warden at Mansfield Correctional Institution M.A.N.C.I. and acted as the Warden's designee on various inmate matters.

10. Defendant Jane Doe Nurse was at all times relevant herein, directly employed by or under contract to the State of Ohio, Ohio Department of Rehabilitation and Corrections as a nurse in the Infirmary at M.A.N.C.I.

## INTRODUCTORY FACTS

11. In or about late January 2023, Plaintiff while incarcerated at North Central Correctional Complex (N.C.C.C.), a private prison operated by Management and Training Corporation under contract with the Ohio Department of Rehabilitation and Corrections suffered serious injury after a fall from a bunk of a segregation cell.

12. The facts of the fall itself are irrelevant to this complaint as any civil action related to the cause of the fall is the jurisdiction of the Marion County Court of Common Pleas and an action is pending in that Court.

13. The purpose of the introduction of the limited facts of the fall is to introduce the serious nature of the injuries suffered by Rossbach immediately before his transfer to M.A.N.C.I.

14. In falling from the bunk, Plaintiff struck his head on the steel toilet knocking him unconscious.

15. Plaintiff was originally treated at Marion General Hospital Emergency and underwent both an MRI and CT scan and was diagnosed with a concussion as well as both neck and spinal injuries, resulting in arm numbness. Plaintiff also suffered a lower back injury, a right knee injury and hearing impairment.

16. Upon being discharged from Marion General Hospital, Plaintiff was advised that a consultation with a neurosurgeon had been scheduled for the following week and the consultation was referenced in his discharge instructions, which would have become part of his permanent DRC record.

17. After treatment, including being placed in a cervical collar for the purpose of stabilization, Plaintiff was returned to N.C.C.C. and placed in the infirmary.

18. Within five (5) days of being returned to N.C.C.C., Plaintiff was transferred to Mansfield Correctional Institution in early February 2023. Prior to leaving N.C.C.C., the cervical collar was removed from Plaintiff.

### COUNT ONE
### Violation of the Eighth Amendment
### Cruel & Unusual Punishment
### Failure to Provide Adequate Medical Care

19. Plaintiff incorporates paragraphs 1-18, as if fully rewritten herein.

20. Upon arrival at M.A.N.C.I., despite the fact that Plaintiff had been removed from the N.C.C.C. infirmary, and despite the nature of his injuries indicated in his record, Plaintiff was placed in general population in cell block 4C.

21. The pain medication the Plaintiff was on at the time was taken away.

4

22. O.A.C. 5120-9-60(C) states "Inmates incarcerated in a correctional institution operated by the department of rehabilitation and correction **may expect** the following health care services.

23. O.A.C. 5120-9-60(C)(1) requires an admission evaluation consisting of but not limited to, a comprehensive baseline health history including inquiry into current health problems.

24. The purpose of the evaluation is to provide care that is medically necessary.

25. O.A.C. 5120-9-60(B) defines medically necessary care as "care without which the offender could not be maintained without significant risk of loss of life, loss of limb or significant bodily function.

26. No medical evaluation was conducted on Plaintiff as required by Ohio Administrative Code (O.A.C) 5120-9-60.

27. Also included in the definition of medically necessary is "care without which one could expect significant pain or discomfort, further serious deterioration of the offender's medical status and/or a significant reduction in the chance of repair …"

28. As a result of failure to conduct the evaluation, wherein a simple review of the record would have established the need for treatment of Plaintiff's injuries that were sustained during the fall at N.C.C.C. approximately one week earlier, and the removal of Plaintiff from pain medication, Plaintiff suffered a lack of mobility and extreme pain and discomfort, including the need to move about or sit with his chin tucked into his chest to try and alleviate the pain for nearly 13 months.

29. Defendant Heter, as the institution's Health Care Administrator, was responsible for assuring the evaluation was completed.

30. At the time of Plaintiff's incarceration at Mansfield, Kendra Newland, NP and Jessee Glass CNP were the only what the O.D.R.C. terms upper-level care providers, there was no

5

physician on staff or engaged by contract and were responsible for the direct care of Plaintiff including conducting the required evaluation.

31. As a direct result of policy established by Defendants McConahy and Heter and applied by Defendants Newland and Glass, as well as the improper staffing by Defendant McConahay and Heter in not having a physician available for diagnosis and treatment, Plaintiff failed to receive adequate medical care as required by law.

32. As a result of the failure of Defendants Heter, Newland and Glass to provide the evaluation required by law, Plaintiff was unable to receive the medically necessary treatment required, which resulted in Plaintiff suffering extreme pain and discomfort and further resulting in the aggravation and deterioration of Plaintiff's permanent injuries complicating the surgery that Plaintiff ultimately received from an independent neurosurgeon.

33. The actions of each Defendant demonstrates a deliberate indifference to Plaintiff's medical needs, and a failure to provide adequate medical care under the Eighth Amendment and thus constitutes cruel and unusual punishment

### COUNT TWO
### Violation of the Eighth Amendment
### Cruel & Unusual Punishment
### Failure to Provide Adequate Medical Care

34. Plaintiff incorporates paragraphs 1- 33, as if fully rewritten herein.

35. From the time of arrival at M.A.N.C.I. until May of 2023, Plaintiff, during medical visits to the infirmary, estimated between ten and fifteen, requested treatment by Defendants Newland, Glass, and Jane Doe nurses for his injuries suffered at M.C.C.C.

36. Plaintiff's multiple requests were ignored causing Plaintiff to suffer great pain and the loss of everyday functionality.

6

37. Newland and Glass were directly responsible for the care of the Plaintiff while Jane Doe nurse was responsible for documenting not ignoring Plaintiff's requests for treatment.

38. During the same period of time, Plaintiff was denied any form of pain medication to replace medication he had been receiving for his injuries after treatment at N.C.C.C., which was taken away upon entering M.A.N.C.I.

39. Specifically, Plaintiff was taking the prescription drug Tramadol which is used for the management of moderate to moderately severe pain in adults, when he arrived at M.A.N.C.I.

40. Defendants' failure to properly treat Plaintiff led to Plaintiff suffering extreme pain and an aggravation of his then existing injuries, complicating his ultimate extensive neck and back surgical procedures.

41. Defendants' denial of treatment, after having actual notice through Plaintiff's multitude of direct requests demonstrates a deliberate indifference to Plaintiff's medical needs and a failure to provide adequate medical care under the Eighth Amendment and thus constitutes cruel and unusual punishment.

**COUNT THREE**
**Violation of the Eighth Amendment**
**Cruel & Unusual Punishment**
**Failure to Provide Adequate Medical Care**

42. Plaintiff incorporates paragraphs 1- 41 as if fully rewritten herein.

43. In June of 2023, Plaintiff was sent out to OSU Medical Center for a nerve test in his legs.

44. While the test was never discussed with Plaintiff, before or after the procedure, Plaintiff had the belief at that time that something was being done to try and respond to his multiple requests for medical treatment.

45. However, no treatment was ordered after the testing despite Plaintiff continuing to

raise the issue with Medical, primarily Defendants Newland and Glass.

46. After still not having any treatment for either his neck or back, Plaintiff in early July 2023 began sending kites and then grievances complaining about the pain he was suffering from his neck and requesting treatment.

47. On July 6, 2023, Plaintiff sent a Kite #261719171 to medical, specifically Defendant Heter requesting a meeting to discuss the fall he had at N.C.C.C and the resulting injuries.

48. After meeting with Defendant Heter and having received no follow up, Plaintiff on July 17, 2023, sent Kite #264643561 to Medical complaining about severe neck pain.

49. With no response, Plaintiff followed up with similar Kites on July 18, 2023, and July 21, 2023. The Kites were numbered 264891051 and 265217601 respectively.

50. On August 1, 2023, Plaintiff met with Heter, presumably in response to his multitude of requests for medical treatment on his neck and back.

51. Plaintiff filed his first grievance related to not receiving any treatment for his neck or back on August 1, 2023. The grievance was numbered Manci 000000001095.

52. Plaintiff met with Defendant Heter to discuss the grievance on or about August 3, 2023.

53. Plaintiff questioned Heter as to whether or not she knew what happened to him at M.C.C.C. and she then showed him a computer screen and indicated she had read all about it.

54. Heter making that statement directly conflicted with what Plaintiff had been told for months by Newland and Glass that M.A.N.C.I. had no records of the incident at M.C.C.C.

55. Heter informed the Plaintiff that he was getting an MRI the following day which would cover his entire spine and would help diagnose any problems with his neck or back.

56. Plaintiff then questioned Heter as to why he needed a new MRI when an MRI had been performed at Marion General the day of his injury, and based on that MRI a consult with a neurosurgeon had been scheduled for a week after his release from Marion General.

57. Heter claimed that they had no record of the MRI and had no knowledge of an appointment being scheduled with a neurosurgeon.

58. Plaintiff then questioned why nothing had been done to offer him treatment and why his specific requests for treatment had been ignored.

59. Heter responded that she did not know why it took so long and again stated that Plaintiff needed a new MRI to see a neurosurgeon.

60. The MRI was scheduled as stated, however, the tech that performed the MRI indicated the MRI was only ordered for the lower back and would not show anything related to his neck, which at the time was the more serious issue.

61. Subsequent to receiving the MRI but having not been given any updates as to the results of the MRI or as to possible treatment and with the pain increasing and his mobility becoming limited, Plaintiff filed two back-to-back grievances on August 20, 2023, directly requesting medical treatment.

62. Those grievances were numbered Manci 000000001465 and Manci 000000001466.

63. Both grievances were denied, and the response to grievance 000000001465 was that no further action will be taken.

64. While Plaintiff was given an MRI after seven plus months of begging for treatment, the MRI was only provided to deflect responsibility from Defendants for their failure to provide any medical treatment to that point.

65. Defendants' failure to properly treat Plaintiff led to an aggravation of his existing injuries, which ultimately had to be treated with extensive neck and back surgery.

66. Defendants' denial of treatment, after having actual written notice through Plaintiff's multitude of kites and grievances demonstrate a deliberate indifference to Plaintiff's serious medical needs and a failure to provide adequate medical care under the Eighth Amendment and thus constitutes cruel and unusual punishment.

## COUNT FOUR
### Violation of the Eighth Amendment
### Cruel & Unusual Punishment
### Failure to Provide Adequate Medical Care

67. Plaintiff incorporates paragraphs 1-66 as if fully rewritten herein.

68. After another month-delay of any possible treatment, Plaintiff on September 6, 2023, submitted another Kite. The Kite numbered 287765721 again specifically requested medical treatment for Plaintiff's neck injury.

69. Plaintiff submitted a follow-up Kite numbered 317840341 on September 22, 2023, again asking for help.

70. Approximately one week later, and two months after meeting with Defendant Heter and with nothing having been done Plaintiff was notified that a telemed appointment had been arranged with OSU Neurosurgeon David Xu.

71. The appointment came nine months after a scheduled neurological consult had been scheduled for Plaintiff while he was being treated at Marion General after his initial fall.

72. There was no follow up on that appointment after Plaintiff entered M.A.N.C.I.

73. During the telemed, Dr. Xu discussed how and when Plaintiff incurred his injuries.

74. As a result of the consultation, Dr. Xu recommended immediate surgery on the neck with the back to follow.

75. On or about October 3, 2023, Defendant Newland issued the Plaintiff a cane as the first assistance device that Plaintiff had received since arriving at M.A.N.C.I. despite his ongoing need from day one of being incarcerated at M.A.N.C.I.

76. Newland also stated that she had put in a request for neck surgery on that date.

77. After another two weeks passed, Plaintiff again submitted a Kite, which was numbered 329653321 again requesting help with his neck.

78. At some point in mid-November 2023, after approximately another 45 days had passed, Plaintiff filed another grievance.

79. On November 22, 2023, Plaintiff was summoned to Medical where he met with Heter to discuss his latest grievance.

80. During that meeting Plaintiff was advised that his surgery had been approved and that it would take place at the end of December 2023. He was later informed of a specific date of December 23, 2023.

81. After the date that he was advised his surgery would take place had passed with no explanation, Plaintiff filed two more grievances.

82. Each grievance number 03063 filed on January 2, 2024, and number 03786 filed on January 5, 2024 sought information of the continuing delay.

83. Ultimately, the spinal surgery was finally conducted on February 23, 2024, some 13 months after Plaintiff entered M.A.N.C.I. with an immediate need for the procedure.

84. The undue delay caused the Plaintiff to suffer great pain and the lack of mobility and further complicated the surgical procedure that was performed.

85. Defendants Heter, Newland and Glass are directly responsible for the undue delay, which was not the result of any medical reason.

11

86. Each of the Defendant's actions constituted a deliberate indifference to Plaintiff's serious medical needs and a failure to provide adequate medical care under the Eighth Amendment and thus constitutes cruel and unusual punishment.

### COUNT FIVE
### Eighth Amendment
### Cruel & Unusual Punishment
### Failure to Provide Adequate Medical Care

87. Plaintiff incorporates paragraphs 1-86 as if fully rewritten herein.

88. Plaintiff returned to M.A.N.C.I. on or about July 14, 2024, after undergoing major back surgery and post-surgical stay of nine days during which the Plaintiff was on heavy pain medication.

89. The nature of the surgery, like that of the spinal surgery, was complicated as a result of the undue delay of Defendants with no medical reason to support the delay.

90. As a result of the back surgery, Plaintiff had approximately 66 staples holding the site of the surgical incision together.

91. Additionally, the surgery required the internal placement of metal rods on both his right and left side running from his lower back to his upper back as well as another metal rod running along his lower back to connect and stabilize the other two rods.

92. Plaintiff had no ability to walk without assistance from other people and was also in extreme pain.

93. Plaintiff was not initially provided with any device for assistance with walking.

94. Plaintiff specifically requested medication for pain and was only given two 200mg Tylenol by Jane Doe Nurse and advised to buy his own at the commissary, despite the fact of the extreme level of pain he was in, which was exasperated by not providing timely care.

95. Plaintiff complained for months regarding the pain requesting medication and it was not till early December 2024, when Plaintiff was prescribed pain medication. The medication tramadol was the same medicine that was taken away from Plaintiff when he first arrived at M.A.N.C.I. in early February 2023.

96. Initially, certain inmates and correction officers, to their credit, were assisting Plaintiff with bringing food trays to his cell.

97. On or about July 17, 2024, counsel was advised that upfront, referring to administration had ordered both inmates and correction officers to stop assisting Plaintiff, including the threat that inmates could be disciplined for assisting Plaintiff.

98. Basically, the statement was made that Plaintiff had to make it to the chow hall on his own or starve.

99. On July 17, after being informed of the extreme condition of the Plaintiff, counsel emailed Defendant Kasey Plank advising that Plaintiff's treatment was "unacceptable and only adds to the issue created by the undue delays in providing his proper medical care in the first place."

100. Counsel specifically indicated that several inmates were willing to assist and that should be allowed.

101. Plank responded back the following day stating "Sir you are not his attorney of record. I cannot provide any information to you."

102. Regardless of what Plank felt about the status of counsel, upon receiving the information provided she had a duty to ensure that Plaintiff was receiving proper care.

103. Plank did nothing in any way to address the medical needs of Plaintiff and in fact it was reinforced upon the other inmates of the possible consequences of assisting Plaintiff.

104. Plaintiff, subsequent to his surgery, never received any physical therapy or treatment despite Plaintiff's continuing requests for assistance which were ignored by Defendants Heter, Newland and Glass.

105. Each of the Defendant's actions constituted a deliberate indifference to Plaintiff's serious medical needs and a failure to provide adequate medical care under the Eighth Amendment and thus constitutes cruel and unusual punishment.

## COUNT SIX
### Eighth Amendment
### Cruel & Unusual Punishment
### Failure to Provide Adequate Medical Care

106. Plaintiff incorporates paragraphs 1-105 as if fully rewritten herein.

107. Defendant Heter, as Health Care Administrator, is directly responsible for assuring that qualified medical personnel were the providers of health care to Plaintiff.

108. Defendant McConahay, as the Warden had ultimate responsibility for assuring that qualified medical personnel were the providers of health care to Plaintiff.

109. Defendants Newland and Glass, both Nurse Practitioners, practiced above their licensing authority while treating Plaintiff with the full knowledge of Heter and McConahay in violation of Ohio law.

110. Ohio law, in particular R.C. 4723.431 requires nurse practitioners to work 1n collaboration with a physician through a standard care agreement.

111. At the time Plaintiff was being cared for by Newland & Glass, there was no physician on staff at M.A.N.C.I. and no collaborating physician.

112. Both Newland and Glass misrepresented themselves as doctors by giving Plaintiff the impression that he was being treated by an actual M.D.

113. Both Newland and Glass, while caring for Plaintiff issued prescriptions stating that they were issued by a Physician.

114. The misrepresentation was furthered by the fact that medical passes were issued to see either Dr. Newland or Dr. Glass.

115. Plaintiff at all times believed he was being treated by a physician.

116. Defendants Heter and McConahay, in allowing Newland and Glass to practice above their licensed authority, while holding themselves out as a doctor demonstrated a deliberate indifference to Plaintiff's serious medical needs and a failure to provide adequate medical care under the Eighth Amendment and thus constitutes cruel and unusual punishment.

**WHEREFEORE,** Plaintiff prays for compensatory and punitive damages in an amount to be determined by a jury at trial, attorney fees and the costs of this action

Respectfully submitted,

*/s/ Larry D. Shenise*
Larry D. Shenise (0068461)
P.O. Box 357
Rootstown, OH 44272
(330) 472-5622
(877) 583-4874 Fax
ldshenise@sheniselaw.com

*Counsel for Plaintiff*